**O**

# United States District Court
# Central District of California

ANDREW SHUEY; J.S., a minor, by and through his Guardian Ad Litem, Gloria Johnson,

            Plaintiffs,

      v.

COUNTY OF VENTURA; VENTURA COUNTY HUMAN SERVICES AGENCY; MICHELLE CALDER; LISA GOTWALS; SUPERVISOR VILLA; and DOES 1-10 inclusive,

            Defendants.

Case No. 2:14-cv-9520-ODW (SHx)

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS [25]**

## I.   INTRODUCTION

Plaintiffs Andrew Shuey and J.S. bring suit against the County of Ventura ("County"), the Ventura County Human Services Agency ("HSA"), social workers Noe Villa and Michelle Calder, and public health nurse Lisa Gotwals (collectively "Defendants") for violations of state and federal law arising from a child welfare investigation conducted by Defendants.  Defendants move to dismiss Plaintiffs' First Amended Complaint for failure to state a claim.  For the reasons discussed below, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion.  (ECF

No. 25.)[1]

## II.   FACTUAL BACKGROUND

This is a civil rights action arising from a child abuse investigation and a subsequent custody dispute involving J.S., who is Shuey's seven-year-old son.  On December 12, 2013, the school that J.S. was attending notified the HSA that they suspected J.S. was being abused.  (First Am. Compl. ("FAC") ¶ 13.)  In response, the HSA sent two investigators, Calder and Gotwals, to the school to interview J.S. and conduct "a medical procedure involving a physical assessment and examination." (*Id.*)  Calder and Gotwals did not obtain parental consent or a court order to conduct the interview or perform the examination.  (*Id.*)  Shuey, who came to the school after the interview and examination of J.S. was complete, was also interviewed by Calder. (*Id.* ¶ 14.)  Shuey told Calder that he on occasion would spank J.S. on the bottom, and that the marks on J.S.'s face may have resulted from play wrestling and rough-housing with each other.  (*Id.*)  After "consult[ing]" with Villa, Calder informed Shuey that unless he agreed to a safety plan, J.S. would be taken into protective custody.  (*Id.* ¶ 15.)  Shuey agreed to the safety plan.  (*Id.*)

A week later, Shuey took J.S. to Washington to visit J.S.'s mother, with whom Shuey shared custody of J.S.  (*Id.* ¶ 16.)  While J.S. was in Washington, the mother learned of the HSA's December 12 investigation when she contacted J.S.'s school for an unrelated reason.  (*Id.* ¶¶ 16–17.)  The mother then called the HSA and spoke with Calder, who allegedly told the mother that she should take custody of J.S. and initiate custody proceedings in Washington.  (*Id.* ¶ 17.)

On this advice, the mother called Shuey and told him that she would not return J.S. to him.  (*Id.* ¶ 18.)  In response, Shuey obtained a court order in California

---

[1]      To the extent this Order varies from any rulings made by the Court at the hearing on this Motion, those changes are made pursuant to the Court's inherent authority to reconsider its own orders.  *See, e.g.*, *United States v. Martin*, 226 F.3d 1042, 1049 (9th Cir. 2000); *Qualcomm Inc. v. Broadcom Corp.*, No. 05CV1958-B (BLM), 2008 WL 2705161, at *1 (S.D. Cal. July 7, 2008).

directing the mother to surrender custody of J.S. to him, and personally traveled to Washington to take custody of J.S. (*Id.* ¶ 20.) The mother nevertheless still refused to release J.S., forcing Shuey to file a petition for writ of habeas corpus in Washington for J.S.'s return. (*Id.* ¶¶ 22, 23.) As part of the writ proceedings, a Washington State Commissioner called Calder, at which time she falsely told the Commissioner that the allegations of physical abuse against Shuey were substantiated. (*Id.* ¶ 24.) On February 7, 2014, the court nevertheless ordered the mother to surrender custody of J.S. to Shuey, but based on the Commissioner's discussion with Calder, the court also ordered Shuey to submit to urinalysis testing for marijuana, alcohol, and non-prescribed drugs, to not use any kind of corporal punishment against J.S., and to cooperate with all investigations by Washington's Child Protective Services. (*Id.* ¶¶ 25, 26.)

On October 10, 2014, Shuey and J.S. each filed a government tort claim with the County. (*Id.* ¶ 33.) Both claims were denied. (*Id.*) On December 12, 2014, Plaintiffs filed their Complaint. (ECF No. 1.) On June 19, 2015, Plaintiffs filed a Corrected First Amended Complaint (FAC). (ECF No. 22.) The FAC asserts the following claims: (1) assault; (2) battery; (3) false imprisonment; (4) violation of the First, Fourth, and Fourteenth Amendment under 42 U.S.C. § 1983 and 42 U.S.C. § 1985; (5) violation of Procedural Due Process under the Fourteenth Amendment; (6) violation of the Substantive Due Process under Fourteenth Amendment; (7) municipal liability under § 1983 and § 1985; (8) intentional infliction of emotional distress; (9) violation of California Civil Code section 43; (10) violation of California Civil Code sections 51.7 and 52; (11) violation of California Civil Code section 52.1; and (12) injunctive relief. The first three claims are asserted on behalf of J.S. only. The remaining claims are asserted on behalf of both J.S. and Shuey.

On June 26, 2015, Defendants moved to dismiss the FAC. (ECF No. 25.) Plaintiffs timely opposed, and Defendants timely replied. (ECF Nos. 31, 33.) Defendants' Motion is now before the Court for consideration.

### III.   LEGAL STANDARD

A court may dismiss a complaint under Rule 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  To survive a dismissal motion, a complaint need only satisfy the minimal notice pleading requirements of Rule 8(a)(2)—a short and plain statement of the claim. *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003).  The factual "allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  That is, the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The determination whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.  A court is generally limited to the pleadings and must construe all "factual allegations set forth in the complaint . . . as true and . . . in the light most favorable" to the plaintiff. *Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001).  But a court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

As a general rule, a court should freely give leave to amend a complaint that has been dismissed. Fed. R. Civ. P. 15(a).  But a court may deny leave to amend when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986); *see Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

### IV.   DISCUSSION

**A.   Judicial Notice and Incorporation by Reference**

The Court declines to take judicial notice of the various documents proffered by

Defendants.  (ECF No. 25-1.)  Courts do not take judicial notice of documents per se, but rather of *facts* that are supported by documents "whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  Defendants do not say what fact or facts each document is intended to support, and thus their request fails.

The Court also declines to exercise its discretion to consider the school referral and the safety plan under the incorporation by reference doctrine.  Under that doctrine, "[a] court may consider [on a Rule 12(b)(6) motion] evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the [document]."  *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).  Here, Plaintiffs dispute the authenticity of the referral, thereby precluding its consideration.  (ECF No. 31-1 at 2.)  Moreover, the content of the safety plan is not central to Plaintiffs' claim that Defendants unconstitutionally procured Shuey's agreement to it.  The Court thus declines to consider either document for the purposes of this motion.

**B.    State Law Claims**

Defendants challenge Plaintiffs' state law claims on several grounds.  First, Defendants argue that Plaintiffs did not submit timely government tort claims.  (Mot. at 5–6.)  Second, Defendants argue that various state law immunities and privileges bar Plaintiffs' claims.  (Mot. at 19–21.)  Third, Defendants argue that Plaintiffs have generally failed to state sufficient facts to demonstrate liability under any of the state-law causes of action.  (Mot. at 15–17.)  The Court will address each argument in turn.

**1.    Government Claims Act Compliance**

Under the California Government Claims Act (GCA), a plaintiff must present a timely government claim prior to bringing suit against a public entity or employee.  Cal. Gov. Code §§ 905, 945.4, 950; *Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 627 (9th Cir. 1988).  The GCA applies to state law claims brought in federal court, and failure to comply with its requirements mandates dismissal of those claims.  *Karim-Panahi*, 839 F.2d at 627.  Claims arising from personal injuries must be

presented within six months of accrual.  Cal. Gov. Code §§ 911.2, 950.2.  A cause of action accrues at the time of the injury-producing event.  *Campanano v. Cal. Medical Ctr.*, 38 Cal. App. 4th 1322, 1329 (1995).

The incidents underlying Plaintiffs' state law claims occurred between December 12, 2013 and February 7, 2014.  (FAC ¶¶ 13–25.)  Plaintiffs filed their government claims on October 10, 2014, more than six months later.  (*Id.* ¶ 33.) Plaintiffs argue that the claims were nevertheless timely because Defendants engaged in wrongful conduct through May 2014 that was intended to deter Plaintiffs from filing a government claim, thus delaying accrual of the action until then.  (Opp'n at 6– 8.)  There are two problems with this argument.  First, the only conduct after February 2014 referenced in the FAC is an interview of J.S. that was conducted pursuant to a warrant.  (FAC ¶ 28.)  The FAC does not specify when this interview occurred, and thus there is no basis for tolling accrual of the claims until May 2014.  Second, Plaintiffs do not allege, nor can it be reasonably inferred, that this conduct was intended specifically to deter the filing of a government claim for Defendants' prior conduct.  *Ortega v. Pajaro Valley Unified Sch. Dist.*, 64 Cal. App. 4th 1023, 1045 (1998) (doctrine applies only where there are "acts of *violence or intimidation* that are *intended* to prevent the filing of a claim" (emphasis in original)).  Accordingly, the Court dismisses Shuey's state law causes of action without leave to amend.

J.S.'s claims, however, fall under the exception of Government Code section 911.6, which provides that "the board shall grant a late claim application where the person who sustained the injury was a minor."  The County was therefore required to accept J.S.'s late petition without forcing him to petition the court for relief from the claims statute.  Cal. Gov. Code § 911.6(b)(2).  Therefore, J.S. can maintain his state law claims.

### 2.     Privileges and Immunities

Defendants argue that Government Code sections 821.6 and 820.2 bar Plaintiffs' state law claims.  *See, e.g.*, *Jacqueline T. v. Alameda Cnty. Child Protective*

*Servs.*, 155 Cal. App. 4th 456, 466 (2007) ("[A] social worker's decisions relating to, as here, the investigation of child abuse . . . are discretionary decisions subject to immunity under section 820.2, and/or . . . section 821.6."); *Alicia T. v. Cnty. of L.A.*, 222 Cal. App. 3d 869, 883 (1990); *Jenkins v. Cnty. of Orange*, 212 Cal. App. 3d 278, 284 (1989).

Plaintiffs do not argue that these two statutes do not apply in the first instance. Rather, Plaintiffs assert that Government Code sections 820.21 and 820.4 exempt Plaintiffs' claims from those immunities.  (Opp'n at 22–23.)  Under section 820.21, social workers are not entitled to any immunity for the following acts if committed with malice: "(1) perjury; (2) fabrication of evidence; (3) failure to disclose known exculpatory evidence; and (4) obtaining testimony by duress . . . fraud . . . or undue influence."  Cal. Gov't Code § 820.21.  However, as Defendants point out, this exception does not encompass all, or even most, of the allegations in the FAC.  The acts underlying this lawsuit include: (1) the December 2013 interview and physical examination of J.S.; (2) coercing Shuey to sign the Safety Plan; (3) Calder advising J.S.'s mother to retain custody of J.S. in Washington; and (4) Calder's allegedly false statements to the Washington State Commissioner.  Although Calder's false testimony arguably falls within the perjury exception,[2] none of the other acts even arguably fall within section 820.21.

Section 820.4 does not help Plaintiffs at all.  That statute states in full: "A public employee is not liable for his act or omission, exercising due care, in the execution or enforcement of any law.  Nothing *in this section* exonerates a public employee from liability for false arrest or false imprisonment."  Cal. Gov't Code § 820.4 (emphasis added).  Defendants do not rely on the immunity in section 820.4 in the first place, and thus the stated exception is irrelevant.

---

[2]    The Court assumes that Calder was placed under oath before making these statements.  *Cf. People v. Walker*, 247 Cal. App. 2d 554, 559 (1967) ("To convict one of the crime of perjury in violation of Penal Code section 118 it must be proved that the defendant . . . took an oath . . . .").

Finally, Defendants argue that Civil Code section 47 precludes liability based on perjurious statements made in a judicial proceeding. While that is ordinarily the case, *see Carden v. Getzoff*, 190 Cal. App. 3d 907, 915 (1987), the Court concludes that section 47 does not overcome section 820.2's express exception for liability arising from perjury committed by social workers. The Court agrees with the reasoning in *Parkes v. Cnty. of San Diego*, 345 F. Supp. 2d 1071 (S.D. Cal. 2004), that "if section 47 was able to shield defendants from liability despite the language of section 820.21, it would render [] section [820.21] a nullity." *Id.* at 1085.

In sum, the Court dismisses without leave to amend J.S.'s state law claims in so far as they are based on (1) the December 2013 interview and physical examination of J.S.; (2) coercing Shuey to sign the Safety Plan; and (3) Calder advising J.S.'s mother to retain custody of J.S. in Washington.

### 3.     Failure to State Sufficient Facts

The only remaining state law claims are J.S.'s claim for intentional infliction of emotional distress, and his claims under the California Civil Code for Calder's allegedly false testimony to the Washington State Commissioner. The Court declines to evaluate the merits of these claims at this time. Given that the vast majority of the original state law claims have been dismissed, it is now unclear what allegations go to the dismissed theories and what allegations go to the viable theories. Thus, the FAC no longer contains a "short and plain" statement showing that J.S. is entitled to relief under state law. Fed. R. Civ. P. 8(a). Consequently, the Court dismisses J.S.'s remaining state law claims with leave to amend.

## B.     Federal Claims

### 1.     Fourth Cause of Action

#### a.     First Amendment

Defendants argue that Plaintiffs' First Amendment retaliation theory is not viable because the allegedly retaliatory conduct occurred *prior* to any contact they had with Shuey. (Mot. at 10–11.) Plaintiffs counter that their First Amendment claim is

based on Calder's discussions with J.S.'s mother and her statements to the Washington State Commissioner, which Plaintiffs argue were taken in retaliation for Shuey exercising his First Amendment right to object to Defendants' interference with his custody rights of J.S. (Opp'n at 14.)

"The First Amendment forbids government officials from retaliating against individuals for speaking out. To recover under § 1983 for such retaliation, a plaintiff must prove: (1) he engaged in constitutionally protected activity; (2) as a result, he was subjected to adverse action by the defendant that would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) there was a substantial causal relationship between the constitutionally protected activity and the adverse action." *Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 543 (9th Cir. 2010) (citations and footnote omitted).

While Plaintiffs argue in their Opposition that Shuey engaged in constitutionally protected activity when he objected to Defendants' interference with his custody rights, nowhere is this alleged in the FAC. As a result, it is impossible to determine whether the retaliatory conduct occurred before or after Shuey's protestations. Plaintiffs' First Amendment retaliation claim is therefore dismissed with leave to amend.

### b.    Fourth Amendment

Plaintiffs argue that the warrantless detention and questioning of J.S. violated his Fourth Amendment rights. (Opp'n at 8–10.) "The Fourth Amendment protects individuals from unreasonable searches and seizures conducted by the Government." *Nat'l Treasury Emps. Union v. Von Raab*, 489 U.S. 656, 665 (1989); *see also Doe v. Heck*, 327 F.3d 492, 509 (7th Cir. 2003) (holding that the Fourth Amendment applies to child welfare workers). The court in *Doe* held that a twenty-minute school interview conducted by social workers constituted a "seizure" because a "reasonable person would not have believed that he was free to leave." *Id.* at 510. Similarly here, the FAC alleges that J.S., who was seven years old at the time and unaccompanied by

his father, was interviewed at school by social welfare workers.  As alleged, the Court agrees that a reasonable child in J.S.'s position would not believe that he was free to leave, and thus J.S. was seized within the meaning of the Fourth Amendment.

Moreover, it is axiomatic that "[a] seizure conducted without a warrant is '*per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well delineated exceptions.'"  *United States v. Hawkins*, 249 F.3d 867, 872 (9th Cir. 2001).[3]  Plaintiffs allege that the interview was conducted without a warrant, and contrary to Defendants' assertion, "[t]he burden is on the Government to persuade the district court that a seizure comes 'under one of a few specifically established exceptions to the warrant requirement.'"  *Id.*  Defendants fail to do this. Thus, Defendants' motion to dismiss with respect to the Fourth Amendment violation is denied.

## 2.    Sixth Cause of Action (Substantive Due Process)

The conduct underlying Plaintiffs' substantive due process claim include: (1) the interview and physical examination of J.S.; (2) the forced signing of the safety plan; (3) Calder's telephone call with J.S.'s mother; and (4) Calder's statements to the Washington State Commissioner.  Defendants argue that none of this conduct violates Plaintiffs' substantive due process rights.  (Mot. at 8, 11–12, 13–14.)

"A parent has a 'fundamental liberty interest' in companionship with his or her child."  *Rosenbaum v. Washoe Cnty.*, 663 F.3d 1071, 1079 (9th Cir. 2011) (per curiam).  "To amount to a violation of substantive due process, however, the harmful conduct must 'shock the conscience' or 'offend the community's sense of fair play and decency.'"  *Id.* (quoting *Rochin v. California*, 342 U.S. 165, 172–73 (1952)).

/ / /

---

[3]    Plaintiffs improperly cite and rely on *Greene v. Camreta*, 588 F.3d 1011 (9th Cir. 2009), for the proposition that the seizure was unreasonable.  That portion of *Greene* was vacated by the Supreme Court, *Camreta v. Greene*, 131 S. Ct. 2020, 2036 (2011), which even the most cursory legal research would have revealed.  The Court reminds Plaintiffs' counsel of their ethical obligation to refrain from citing overruled authority.  Cal. Rules Prof. Conduct, Rule 5-200(D).

i.       **Interview and Physical Examination**

Defendants argue, and the Court agrees, that the interview of J.S. does not shock the conscience or offend the community's sense of fair play and decency. Plaintiffs do not cite any cases holding that interviews of minors without parental consent or attendance are per se violations of substantive due process, and there are no allegations whatsoever suggesting that this interview was conducted in a particularly egregious manner.  Moreover, contrary to Plaintiffs' suggestion, the mere fact that the interview as alleged violated the Fourth Amendment does not mean that Plaintiffs have made out a substantive due process claim. *See Graham v. Connor*, 490 U.S. 386, 395 (1989) ("[Where] the Fourth Amendment provides an explicit textual source of constitutional protection against . . . physically intrusive governmental conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims.").  Thus, the Court dismisses any substantive due process claims based on the interview without leave to amend.

However, with respect to the physical examination of J.S., the Ninth Circuit has held that "parents have a right arising from the liberty interest in family association to be with their children while they are receiving medical attention (or to be in a waiting room or other nearby area if there is a valid reason for excluding them while all or a part of the medical procedure is being conducted). Likewise, children have a corresponding right to the love, comfort, and reassurance of their parents while they are undergoing medical procedures, including examinations." *Wallis v. Spencer*, 202 F.3d 1126, 1142 (9th Cir. 2000); *see also Greene v. Camreta*, 588 F.3d 1011, 1037 (9th Cir. 2009), *overruled on other grounds*, 563 U.S. 692.  Plaintiffs are correct that the degree of intrusiveness of the medical examination is not relevant under either *Wallis* or *Greene*.  While there may have been "some legitimate basis for exclud[ing]" Shuey, *Greene*, 588 F.3d at 1037, that basis is not disclosed on the face of the FAC. Thus, the Court declines to dismiss Plaintiffs' substantive due process claim insofar as it is based on the physical examination.

### ii.  Safety Plan

Defendants argue, in essence, that safety plans do not violate substantive due process as a matter of law, citing *Dupuy v. Samuels*, 465 F.3d 757, 762 (7th Cir. 2006).  (Mot. at 12.)  There is no such holding in *Dupuy*.  *Dupuy* holds that no constitutional violation occurs when a social worker informs the parent of the *possibility* of the child being removed if he or she does not agree to a safety plan.  *Dupuy* specifically distinguishes the situation where a parent is told that removal *will occur unless* they agree to a safety plan.  *Id.* at 763.  This is exactly what Plaintiffs allege here, and thus it is sufficient.  (FAC ¶ 15.)  Whether that allegation holds up on summary judgment or at trial is another matter.

### iii.  Telephone Call

Defendants argue that Calder was not acting as a state actor when she advised J.S.'s mother to take full custody of J.S. in Washington and initiate custody proceedings there.  (Mot. at 12–13.)  "To constitute state action, the deprivation must be caused by the exercise of some right or privilege created by the State or by a person for whom the State is responsible, and the party charged with the deprivation must be a person who may fairly be said to be a state actor.  State employment is generally sufficient to render the defendant a state actor.  It is firmly established that a defendant in a § 1983 suit acts under color of state law when he abuses the position given to him by the State."  *West v. Atkins*, 487 U.S. 42, 49–50 (1988) (citations and internal quotation marks omitted).  Here, Plaintiffs allege that Calder spoke with J.S.'s mother as a representative of the HSA.  That Calder had no jurisdiction in Washington does not mean that this conduct was not taken in her capacity as an HSA employee.  Thus, Plaintiffs have alleged sufficient facts to show that Calder was a state actor.

### iv.  Statements to Washington State Commissioner

Defendants' argument that Calder's statements to the Commissioner do not violate substantive due process does not make sense.  Defendants concede that "social workers may be subject to liability under substantive due process if, under color of

state law, they make deliberately false statements under oath while . . . testifying in a dependency hearing." (Mot. at 13.) Defendants then argue that no liability attaches here because the FAC does not establish that any false statements were deliberately made, and because there is no causal connection between those statements and any subsequent adverse events. (Mot. at 14.) The former is simply not true; Plaintiffs clearly make that allegation. The latter is immaterial; if Defendants concede that false testimony itself violates due process, it does not need to cause anything further in order to be actionable.

### 2.     Fifth Cause of Action (Procedural Due Process)

Defendants challenge Plaintiffs' procedural due process claims with respect to the interview, the medical procedure, and the safety plan. (Mot. at 8–12.) Procedural due process claims are analyzed in two steps: "the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted).

### i.     The Interview

J.S.'s procedural due process claim with respect to the interview essentially duplicates his Fourth Amendment claim—that is, Plaintiffs allege that Defendants should have obtained consent or a court order prior to conducting the interview. (Opp'n at 11.) Plaintiffs do not identify any additional process beyond the Fourth Amendment requirements that they believe J.S. was entitled to. Thus, "in light of the separate Fourth Amendment claim, [P]laintiffs' procedural due process claim . . . is superfluous and [the conduct] must be analyzed under Fourth Amendment principles." *Rubenstein v. Whittier Police Dep't*, No. CV 13-9549 JLS KK, 2014 WL 4793437, at *6 (C.D. Cal. Sept. 25, 2014). That said, Defendants do not appear to challenge Shuey's procedural due process claim with respect to the interview. Thus, the Court dismisses only J.S.'s procedural due process claim insofar as it is based on the

interview.

### ii.   The Medical Procedure

Defendants argue that Plaintiffs were afforded sufficient process with respect to the physical examination of J.S.  Plaintiffs do not respond to, and thus concede, this argument.  *See Walsh v. Nev. Dep't of Human Res.*, 471 F.3d 1033, 1037 (9th Cir. 2006); *Hopkins v. Women's Div., Gen. Bd. of Global Ministries,* 238 F. Supp. 2d 174, 178 (D.D.C. 2002).  The procedural due process claim with respect to the medical procedure is therefore dismissed.

### iii.   The Safety Plan

Defendants argue that under *Dupuy*, 465 F.3d 757, they are not required to afford Plaintiffs *any* process because the safety plan is completely voluntary.  (Mot. at 12.)  Plaintiffs do not respond to this argument either.  Thus, the procedural due process claim with respect to the safety plan is dismissed.

### 4.   Seventh Cause of Action (Municipal Liability)

Defendants argue that municipal liability cannot exist because there was no constitutional violation.  *See City of L.A. v. Heller*, 475 U.S. 796, 799 (1986) (municipal liability does not exist where no constitutional violation is shown).  As the Court has concluded that Plaintiffs adequately alleged several constitutional violations, Defendants' argument fails.

### 5.   Conspiracy

Defendants argue that Plaintiffs have not sufficiently pleaded a conspiracy.  (Mot. at 14–15.)  To establish a conspiracy under 42 U.S.C. § 1985, a plaintiff must allege that the defendants entered into a common agreement to commit an unconstitutional act, *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2002), and must "allege specific facts to show" such an agreement, *Olsen v. Idaho State Bd. Of Medicine*, 363 F.3d 916, 928 (9th Cir. 2004).

The Court agrees with Defendants that Plaintiffs' conspiracy claims are not adequately pleaded.  For example, although Plaintiffs allege that Calder "consulted

with" Villa before coercing Shuey to agree to the safety plan, this alone does not show that they entered into a common agreement to coerce Shuey into signing the safety plan. Similarly, the mere fact that Calder and Gotwals interviewed and examined J.S. at the same time does not show that they entered into an agreement to deprive Plaintiffs of their constitutional rights. Consequently, the Court dismisses Plaintiffs' conspiracy claims with leave to amend to more specifically allege the facts constituting a conspiracy.

### 6. Absolute Immunity

Defendants argue that under *Rehberg v. Paulk*, 132 S. Ct. 1497 (2012), Calder is entitled to absolute immunity with respect to the statements she made to the Washington State Commissioner. (Mot. at 17–18.) In *Rehberg*, the Court held that a prosecutor who testified in a grand jury proceeding was entitled to absolute immunity, equating testimony in such proceedings with trial testimony. *Id*. at 1499. However, the Court limited its holding to witnesses who are subject to cross-examination. *Id*. at 1509. Here, the FAC does not allege that Calder was subject to cross-examination. Therefore, Calder's conduct is not protected by absolute immunity.

### 7. Qualified Immunity

Defendants argue that Calder, Gotwals, and Villa are entitled to qualified immunity because there is no clearly-established law holding that the alleged conduct is unconstitutional. (Mot. at 18–19.) To establish qualified immunity, Defendants must show "[f]irst, whether the [officers] violated [the plaintiff's] constitutional rights on the facts alleged and, second, if there was a violation, whether the constitutional rights were clearly established." *Desyllas v. Bernstine*, 351 F.3d 934, 939 (9th Cir. 2003) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). "If the law did not put the officer on notice that his conduct would be clearly unlawful . . . qualified immunity is appropriate." *Id*. at 202.

Under the facts as pleaded in the FAC, the individual defendants are not entitled to qualified immunity. With respect to the school interview, the facts as pleaded make

it clear that J.S. was subject to an unlawful seizure because a reasonable child in his position would not believe that he was free to leave, *Doe*, 327 F.3d at 509, and that no warrant was procured or warrant-exception was established, *Hawkins*, 249 F.3d at 872.  With respect to the physical examination of J.S., the facts as pleaded show that Defendants clearly violated his substantive due process rights by not having a parent with him at the time or a sufficient reason for not having him there.  *Wallis*, 202 F.3d at 1142; *Greene*, 588 F.3d at 1037.  With respect to the signing of the safety plan, the facts as pleaded show that Defendants violated his substantive due process rights by wrongly threatening Shuey that J.S. would be removed from the home unless the safety plan was signed.  *Dupuy*, 465 F.3d at 762.  With respect to Calder's telephone call with J.S.'s mother, the Court has dismissed this claim with leave to amend, and thus Defendants' qualified immunity argument is moot.

Again, much may change on summary judgment or at trial.  But for now, the Court must deny Defendants' qualified immunity arguments.

## V.   CONCLUSION

For the reasons discussed above, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion to Dismiss (ECF No. 25.) as follows:

(1)   Shuey's state law claims are dismissed without leave to amend;

(2)   J.S.'s state law claims for assault, battery, and false imprisonment are dismissed without leave to amend;

(3)   J.S.'s state law claims for intentional infliction of emotional distress and violation of California Civil Code sections 43, 51.7, 52, and 52.1 are dismissed without leave to amend insofar as they are based on the December 2013 interview and physical examination of J.S., coercing Shuey to sign the Safety Plan, and Calder advising J.S.'s mother to retain custody of J.S. in Washington;

(4)   J.S.'s remaining state law claims are dismissed with leave to amend;

(5)   Plaintiffs' fourth cause of action for violation of the First Amendment is

dismissed with leave to amend;

(6)    Plaintiffs' sixth cause of action for violation of the Fourteenth Amendment is dismissed without leave to amend with respect to the interview of J.S.;

(7)    Plaintiffs' fifth cause of action for violation of the Fourteenth Amendment is dismissed without leave to amend with respect to the physical examination and the safety plan.  With respect to the interview, the Court dismisses without leave to amend only J.S.'s procedural due process claim;

(8)    Plaintiffs' conspiracy claims are dismissed with leave to amend;

Defendants' Motion is **DENIED** in all other respects.  Plaintiffs shall file an amended Complaint within fourteen days that is consistent with this Order.

**IT IS SO ORDERED.**

November 3, 2015

_____
**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**