O

# United States District Court
# Central District of California

| | |
|---|---|
| ANDREW SHUEY; J.S., a minor, by and through his Guardian Ad Litem, Gloria Johnson,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF VENTURA; VENTURA COUNTY HUMAN SERVICES AGENCY; MICHELLE CALDER; LISA GOTWALS; SUPERVISOR VILLA; and DOES 1-10 inclusive,<br><br>Defendants. | Case No. 2:14-cv-09520-ODW (SHx)<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR LEAVE TO FILE AN AMENDED ANSWER [67]** |

## I. INTRODUCTION

Before the Court is Defendants County of Ventura, Ventura County Human Services Agency ("HSA"), Michelle Calder, Lisa Gotwals, and Noe Villa's Motion for Leave to File an Amended Answer. According to Defendants, their Answer, which was filed in December 2015, inadvertently admitted several allegations that they actually dispute. After the error was brought to their attention, Defendants promptly filed this Motion. Because Defendants were diligent in bringing the motion, and because the amendment is neither prejudicial nor futile, the Court **GRANTS** Defendants' Motion.[1] (ECF No. 67.)

---

[1] After considering the papers filed by the parties, the Court deems the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15.

## II. BACKGROUND

**A.  Factual Background**

This is a civil rights action arising from a child abuse investigation and a subsequent custody dispute involving J.S., who is Shuey's seven-year-old son.  On December 12, 2013, officials at the school that J.S. was attending notified HSA that they suspected J.S. was being abused.  (Third Am. Compl. ("TAC") ¶ 13.)  In response, HSA sent two investigators, Calder and Gotwals, to the school to interview J.S. and conduct "a medical procedure involving a physical assessment and examination."  (*Id.* ¶ 14.)  Calder and Gotwals did not obtain parental consent or a court order to conduct the interview or perform the examination.  (*Id.*)  Shuey, who arrived at the school shortly after the interview and examination, was also interviewed by Calder.  (*Id.* ¶ 15.)  After "consult[ing]" with Villa, Calder informed Shuey that unless he agreed to a safety plan, J.S. would be taken into protective custody.  (*Id.* ¶ 17.)  Shuey agreed to the safety plan.  (*Id.*)

A week later, Shuey took J.S. to Washington to visit J.S.'s mother, with whom Shuey shared custody of J.S.  (*Id.* ¶ 18.)  While J.S. was in Washington, the mother learned of HSA's December 12 investigation when she contacted J.S.'s school for an unrelated reason.  (*Id.*)  The mother then called HSA and spoke with Calder, who allegedly told the mother that she should take custody of J.S. and initiate custody proceedings in Washington.  (*Id.* ¶¶ 19–20.)

On this advice, the mother called Shuey and told him that she would not return J.S. to him.  (*Id.* ¶ 20.)  In response, Shuey obtained a court order in California directing the mother to surrender custody of J.S. to him, and personally traveled to Washington to take custody of J.S.  (*Id.* ¶ 22.)  The mother still refused to release J.S., forcing Shuey to file a petition for writ of habeas corpus in Washington for J.S.'s return.  (*Id.* ¶ 24.)  During the writ proceedings, the presiding Washington State Commissioner called Calder.  (*Id.* ¶ 27.)  Calder incorrectly informed the Commissioner that the allegations of physical abuse against Shuey were substantiated.

(*Id.*)  The court nevertheless ordered the mother to surrender custody of J.S. to Shuey. However, the court also ordered Shuey to submit to urinalysis testing for marijuana, alcohol, and non-prescribed drugs, to not use any kind of corporal punishment against J.S., and to cooperate with all investigations by Washington's Child Protective Services.  (*Id.* ¶¶ 25–28.)

**B.     Procedural History**

On December 12, 2014, Plaintiffs filed this action.  (ECF No. 1.)  Plaintiffs subsequently filed a First Amended Complaint.  (ECF Nos. 19, 22.)  Defendants moved to dismiss the First Amended Complaint, and also moved to strike the Complaint under California Code of Civil Procedure section 425.16.  (ECF Nos. 24, 25.)  The Court denied the Motion to Strike, and granted in part and denied in part the Motion to Dismiss.  (ECF Nos. 45, 46.)  Thereafter, Plaintiffs filed a Second Amended Complaint.  (ECF No. 47.)  On December 7, 2015, Plaintiffs filed a Third Amended Complaint ("TAC") pursuant to a stipulation between the parties.  (ECF No. 52.)

The TAC, which is now the operative complaint, asserts the following claims: (1) violation of the First, Fourth, and Fourteenth Amendment under 42 U.S.C. § 1983 and 42 U.S.C. § 1985; (2) violation of Procedural Due Process under the Fourteenth Amendment; (3) violation of Substantive Due Process and Procedural Due Process under the Fourteenth Amendment; (4) municipal liability under § 1983 and § 1985; (5) intentional infliction of emotional distress; (6) violation of California Civil Code section 43; (7) violation of California Civil Code section 52.1; and (8) injunctive relief.  (*Id.*)  On December 17, 2015, Defendants answered the TAC.  (ECF No. 53.)

A settlement conference before Magistrate Judge Alicia G. Rosenberg was set for June 22, 2016.  (ECF No. 65.)  On June 16, 2016, Plaintiffs served Defendants with their settlement conference statement, in which Plaintiffs argued that Defendants had conceded liability on Plaintiffs' ninth, tenth, and eleventh causes of action because Defendants' Answer admitted paragraphs 84, 92, and 98 of the TAC.  (Mot.

2.)[2]  Paragraphs 84 and 92 allege that Calder intentionally lied to the Washington State Commissioner when she told the Commissioner that the allegations of physical abuse against Shuey were substantiated when in fact they were not.  (TAC ¶¶ 84, 92.)  Paragraph 98 is simply a boilerplate recitation of the legal elements of various claims, and do not contain any factual assertions.  (TAC ¶¶ 98.)

On the same day that Defendants received Plaintiffs' settlement conference statement, Defendants' counsel asked Plaintiffs to stipulate to the filing of an amended answer to change the admissions to denials.  (Mot. 2.)  Plaintiffs refused.  (*Id.*)  Defendants filed this Motion four days later.  (ECF No. 67.)

### III.  LEGAL STANDARD

When a party moves to amend a pleading beyond the deadline set in the scheduling order, it must first show "good cause" for relief from the deadline.  Fed. R. Civ. P. 16(b)(4); *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607–08 (9th Cir. 1992).  "Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment."  *Johnson*, 975 F.2d at 609.  "[C]arelessness is not compatible with a finding of diligence and offers no reason for a grant of relief.  Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification.  If that party was not diligent, the inquiry should end."  *Id.* (citations omitted).

If the moving party establishes good cause, the party opposing amendment must then show that the proposed amendment should not be allowed under Federal Rule of Civil Procedure 15.  *See id.* at 608 (citing *Forstmann v. Culp,* 114 F.R.D. 83, 85

---

[2] In future, Defendants should include a declaration attesting to facts such as these.  *See Carrasco v. Metro Police Dep't*, 4 F. App'x 414, 416 (9th Cir. 2001) ("[A] memorandum of points and authorities itself has no evidentiary significance. Absent some declaration [attesting to the relevant facts], there is no admissible evidence of th[ose] facts . . . ."); *Uribe v. McKesson*, No. 08CV01285 DMS NLS, 2011 WL 9640, at *9 (E.D. Cal. Jan. 3, 2011) ("[P]oints and authorities are, by definition, argument, not evidence . . . .").

(M.D.N.C. 1987)). Under Rule 15, "[f]our factors are commonly used to determine the propriety of a motion for leave to amend. These are: bad faith, undue delay, prejudice to the opposing party, and futility of amendment." *DCD Programs, Ltd v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987) (citations omitted). While the Rule 15 factors should be analyzed with "extreme liberality" toward favoring amendment, *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981), the moving party cannot "appeal to the liberal amendment procedures afforded by Rule 15" unless it first "satisf[ies] the *more stringent* 'good cause' showing required under Rule 16." *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 952 (9th Cir. 2006) (original emphasis).

## IV. DISCUSSION

### A. Rule 16

The Court begins with the good cause analysis under Rule 16(b). *Johnson*, 975 F.2d at 607–08. Defendants argue that they were diligent because they asked Plaintiffs to stipulate to the filing of an amended answer immediately after learning of the inadvertent admissions, and because they filed this Motion four days after Plaintiffs refused to so stipulate. (Mot. 6–7.) Plaintiffs counter that Defendants "have not shown any good cause to revise [the Court's Scheduling Order] at this late date in the proceedings," but do not further explain how Defendants lacked diligence in bringing this Motion. (Opp'n 8–9.) However, the underlying theme throughout Plaintiffs' Opposition is that discovery taken in this case has proved that the relevant allegations are in fact true, and thus Defendants' admissions were not a mistake but rather a deliberate decision to admit allegations that Defendants could not reasonably contest. (*See* Opp'n 7 (arguing that "[a]ny attempt to now retract [the] admission[] would raise the possibility of Rule 11 sanctions for making false statements to the court").)

If this were the case, Defendants' belated attempt to change its admissions to denials certainly would be problematic. However, the Court concludes that the

5

1 admissions were indeed inadvertent. First, Defendants deny virtually identical factual
2 allegations elsewhere in its Answer, and also deny that Plaintiffs are entitled to relief
3 on *any* of their claims. (Answer ¶¶ 27, 28, 43, 77; Answer at 11.) This is plainly
4 inconsistent with an intent to admit the allegations now in dispute. Second, the
5 sequence of events leading up to this Motion also suggests the admissions were in
6 error. When Plaintiffs pointed out the admissions to Defendants, Defendants
7 immediately requested that Plaintiffs stipulate to the filing of an amended answer to
8 change the admissions to denials. If Defendants' admissions were part of a deliberate
9 strategy, it seems unlikely that Plaintiffs' mediation statement pointing out the
10 admissions would cause Defendants to immediately seek to amend their answer.
11 Finally, the evidence Plaintiffs produced does not show that the allegations are wholly
12 and unequivocally true. That is, while the evidence tends to show that Calder made an
13 incorrect statement to the Washington State Commissioner, it does not unequivocally
14 show that Calder *intended* to mislead the Commissioner; the evidence is also
15 consistent with Calder simply making a mistake.[3] Thus, it is not unreasonable to
16 assume that Defendants intended to deny the allegations based on Calder's lack of
17 intent.

18 The question, then, is whether Defendants acted with diligence in light of their
19 mistake. There is no doubt that Defendants bear some responsibility for not further
20 scrutinizing their answer before filing it. *Johnson*, 975 F.2d at 609 ("[C]arelessness is
21 not compatible with a finding of diligence."). Nonetheless, reasonable diligence does
22 not demand perfection. Given that Plaintiffs' TAC asserts eleven causes of action,
23 contains over one hundred paragraphs of factual and legal assertions (many of which
24 contain multiple sub-paragraphs), and contains a seventy-one-paragraph prayer for
25 relief—all of which span over thirty-one pages—the fact that Defendants' counsel

---

[3] Indeed, in support of Defendants' prior Motions, Calder submitted a declaration making precisely this distinction. (Calder Decl. ¶ 12, ECF No. 24-3.) Plaintiffs even point to this declaration in their Opposition. (Opp'n 3, 8.)

inadvertently admitted three allegations does not compel a finding that they acted without reasonable diligence. Finally, there is no dispute that Defendants promptly moved for leave to amend after they discovered the error. As a result, the Court concludes that Defendants have shown good cause under Rule 16(b).

**B.     Rule 15**

The Court next addresses the factors regarding the propriety of amendment under Rule 15(a), which, as previously noted, must be applied with "extreme liberality" toward favoring amendment. *Webb*, 655 F.2d at 979. Plaintiffs do not argue that there is bad faith or undue delay, and thus the Court addresses only prejudice and futility.

**1.     Prejudice**

Plaintiffs argue that they have conducted discovery since December 2015 on the assumption that Defendants were admitting the relevant allegations, and thus would be prejudiced by this late-stage amendment. Plaintiffs also point to other signs suggesting that the admissions were intentional, such as Defendants' Rule 68 offer of $12,001 and the various documents produced to date purporting to show that the facts to which Defendants admitted were indeed true.

"Prejudice, in the context of a motion to amend, means 'undue difficulty in prosecuting a lawsuit as a result of a change of tactics or theories on the part of the other party.'" *Wizards of the Coast LLC v. Cryptozoic Entm't LLC*, 309 F.R.D. 645, 652 (W.D. Wash. 2015) (quoting *Deakyne v. Cmmsrs. of Lewes,* 416 F.2d 290, 300 (3d Cir. 1969)). Among the Rule 15 factors, prejudice to the party opposing amendment carries the greatest weight. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

The Court finds Plaintiffs' reasons unconvincing. First, as previously noted, Defendants repeatedly denied the exact same allegations elsewhere in their Answer. (Answer ¶¶ 27, 28, 43, 77; Answer at 11.) Thus, the Court fails to see what different or additional discovery or what different tactical approach Plaintiffs would have taken

had Defendants properly denied the allegations. Indeed, Plaintiffs themselves fail to articulate how their approach to this case would have been any different. *See Bechtel v. Robinson*, 886 F.2d 644, 652 (3d Cir. 1989) ("[T]he non-moving party must do more than merely claim prejudice; 'it must show that it was unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered had the . . . amendments been timely.'" (citations omitted)); *Fujisawa v. Compass Vision, Inc.*, No. C07-5642 BZ, 2010 WL 532404, at *1 (N.D. Cal. Feb. 8, 2010) (allowing leave to amend an answer to change admissions to denials to conform with factual denials made in a parallel case, and noting that "[i]t is difficult to conceive how plaintiff would be prejudiced in any meaningful way [by the amendment]"); *Dabbas v. Moffitt & Associates*, No. 07CV0040, 2008 WL 686687, at *2 (S.D. Cal. Mar. 12, 2008) (allowing leave to amend an answer to change an admission to a denial where the defendant previously denied an identical request for admission).

Second, the Court fails to see how the Rule 68 offer or the discovery performed to date supports Plaintiffs' prejudice argument. As discussed above, the evidence Plaintiffs submitted does not show that the allegations at issue are wholly and unequivocally true. Moreover, a settlement offer that is barely five figures does not suggest that Defendants saw liability here; if anything, such a low offer suggests that Defendants assessed this matter as having only nuisance value. Thus, neither the evidence nor the offer shows that Plaintiffs reasonably believed that the admissions were intentional.

Finally, discovery has not yet closed, thus giving Plaintiffs time to conduct any additional discovery that they feel is necessary.

### 2. Futility

Plaintiffs argue that the evidence clearly shows that the allegations are in fact true, that they would prevail on summary judgment on their claims, and thus it would be "futile" for Defendants to amend their answer to deny the allegations. "A court may deny leave to amend if the proposed amendment is futile or would be subject to

dismissal." *Wizards of the Coast LLC v. Cryptozoic Entm't LLC*, 309 F.R.D. 645, 654 (W.D. Wash. 2015); *Johnson v. Am. Airlines, Inc.*, 834 F.2d 721, 724 (9th Cir. 1987) ("[C]ourts have discretion to deny leave to amend a complaint for 'futility,' and futility includes the inevitability of a claim's defeat on summary judgment." (citing *Gabrielson v. Montgomery Ward & Co.*, 785 F.2d 762, 766 (9th Cir. 1986))).

The Court concludes that summary judgment on the question whether Calder intentionally lied to the Washington State Commissioner is far from inevitable. To begin with, where, as here, a party's intent is the issue in dispute, summary judgment is almost always inappropriate. *Provenz v. Miller*, 102 F.3d 1478, 1489 (9th Cir. 1996); *Vaughn v. Teledyne, Inc.*, 628 F.2d 1214, 1220 (9th Cir. 1980). Moreover, as previously discussed, the evidence Plaintiffs present does not unequivocally show that Calder intentionally made false statements; the evidence is also consistent with Calder simply making a mistake. Thus, the Court concludes that Defendants' amendment would not be futile.

Finally, Plaintiffs argue that Defendants concealed certain discovery documents from Plaintiffs before Plaintiffs filed their Third Amended Complaint. However, Plaintiffs do not show any connection between this and the propriety of moving for leave to amend.

## V. CONCLUSION

For the reasons discussed above, the Court **GRANTS** Defendants' Motion for Leave to File a First Amended Answer. (ECF No. 67.) Defendants shall file their amended answer within seven days of the date of this Order.

**IT IS SO ORDERED.**

August 11, 2016

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**